**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

───────────────────────────────────────────

IN RE: FRONTIER COMMUNICATIONS CORP.,

                            Debtor,                            7:20-cv-6268-CM

───────────────────────────────────────────

TSUEI YIH HWA

        Appellant,

    v.

FRONTIER COMMUNICATIONS
CORPORATION, *et al.*

        Appellees

───────────────────────────────────────────

### DECISION AND ORDER DISMISSING THE APPEAL AS EQUITABLY MOOT

McMahon, J:

Tsuei Yih Hwa (Tsuei), proceeding *pro se*, appeals from an order of the United States Bankruptcy Court for the Southern District of New York. The order denied motions by Summer Ridge Group Ltd. to dismiss Frontier Communications Corporation's Chapter 11 bankruptcy proceedings, and also denied Tsuei's motion for the appointment of either a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) and (2), or an examiner pursuant to 11 U.S.C. § 1104(c)(1).

Because the effective date of the plan has passed and the plan of reorganization has been substantially consummated, the appeal is dismissed as equitably moot.

### I. Background

**A. Bankruptcy Beginnings**

Debtor Frontier Communications Corporation filed a voluntary petition for Chapter 11 bankruptcy on April 14, 2020. (Bankr. Case No. 20-22476-rdd, Bankr. Dkt. No. 1).

In May and June of 2020, Summer Ridge Group, Ltd., a Taiwan-based corporation, filed a series of *pro se* motions urging the Bankruptcy Court to dismiss Frontier's Chapter 11 proceedings as fraudulent. (Bankr. Dkt. Nos. 265, 290, 525). Summer Ridge is a creditor of Frontier, as it holds several unsecured Frontier corporate bonds through UBS AG Singapore. (Bankr. Dkt. No. 290 at 66, Annex 1). Its motions were signed by two individuals: Pan Chiu-Chiang and Rick Tsuei, both of whom listed the same address in Taipei.

Summer Ridge's motions asked the Bankruptcy Court "to restore the status quo prior" to Frontier's filing for Chapter 11. (*See, e.g.* Bankr. Dkt. No. 265 at 3). The motions' vague arguments claimed that Frontier's bankruptcy was fraudulent (i.e., that Frontier should be ineligible for Chapter 11 protection) for two main reasons. First, that Frontier affected a goodwill impairment in 2019 to fraudulently undervalue its assets so that it could qualify for bankruptcy. Second, that Frontier selectively repaid debts it owed to certain unsecured creditors before others prior to filing for bankruptcy. (*E.g. id.* at 6). As evidence, Summer Ridge attached several pages of its own financial analyses of Frontier's assets, several of Frontier's investor updates and public SEC filings, and excerpts from accounting standards guidelines. (*See* Bankr. Dkt. No. 290).

On June 1, 2020, Tsuei Yih Hwa, the current appellant and a Singaporean national, filed a *pro se* motion "according to 11 U.S. Code § 1104" for the bankruptcy court "to appoint a trustee or examiner to investigate" Frontier for possible accounting fraud and bankruptcy fraud. (Bankr. Dkt. No. 428 at 1). Tsuei claimed that he was an "unsecured bondholder" and "also a shareholder" of Frontier but did not file any documents with the Bankruptcy Court evincing that claim. (*Ibid.*). Tsuei's one-paragraph submission stated that he was relying on Summer Ridge's arguments in support of his motion, but he did not file anything with the Bankruptcy Court that detailed the extent of the relationship (if any) that he might have had with Summer Ridge. Tsuei, in his

individual capacity, also did not join any of Summer Ridge's motions nor did he file an independent motion to dismiss. He did not explain why – beyond "the evidence presented in" Summer Ridge's motions – it was necessary to appoint a trustee or examiner. (*Ibid*.). For the purposes of this decision, the Court assumes that Mr. Tsuei Yih Hwa is the "Rick Tsuei" who signed Summer Ridge's motions because Tsuei filed a copy of his Singapore identification card on appeal which lists "Rick Tsuei" as an alias. (Dkt. No. 16 at 26).

On June 13, 2020, the Bankruptcy Court noticed a teleconference hearing for June 29, 2020 to decide any and all objections that interested parties may have had to Frontier's proposed "adequate protection order" which, among other things, proposed a schedule for Frontier to pay off its unsecured debt. (Bankr. Dkt. No. 516). In preparation for the hearing, Frontier filed an opposition to both Summer Ridge's and Tsuei's motions on June 23, 2020. (Bankr. Dkt. No. 570).

**B. June 29, 2020 Hearing and Subsequent Orders**

Neither Tsuei nor a representative from Summer Ridge appeared at the June 29th conference. (Transcript of June 29, 2020 hearing, Bankr. Dkt. No. 742 at 82). Frontier's counsel informed the Bankruptcy Court that it had sent Summer Ridge and Tsuei notices referencing the dial-in procedure to the teleconference on June 24, and had also sent a message asking for a list of parties of who would be appearing on June 25. (*Id*. at 83). Frontier continued sending notices on June 26 and 27, encouraging a representative from Summer Ridge or Tsuei to sign up for the teleconference. Frontier's counsel did not receive any response to these inquiries.

However, it was clear that Summer Ridge had notice of the hearing because on the morning of June 27, it emailed Judge Drain's chambers a list of files it intended to use for the hearing. (*Id*. at 84). But Summer Ridge never communicated with the Court nor with Frontier's attorneys after that email, not even after a Frontier attorney sent one last reminder to log in to the teleconference

3

on the morning of the hearing. Judge Drain thus concluded that Summer Ridge and Tsuei "definitely have notice" since "They've been in contact with the clerk's office repeatedly," and thus proceeded to consider the motions on the record he had before him. (*Id*. at 83).

The Bankruptcy Court denied Summer Ridge's motions to dismiss as being improperly filed by a corporation proceeding *pro se*. The Court observed that Summer Ridge's actions "illustrated why the law is clear that a corporation or a similar entity, legal entity, needs to appear in Federal Court by counsel." (*Id*. at 84). It explained:

> The filing of these motions, the failure to schedule hearings on them, the se[nd]ing them ex parte to chambers before advised otherwise, and the content of the motions and the format of the motion and the preparation with this hearing all illustrate why . . . the law of the land is that corporations and other legal entities need to appear by counsel, and they [Summer Ridge] haven't. I need to have counsel vouch for pleadings, subject to Rule 11, incorporated by Bankruptcy Rule 9011, and I don't have counsel here on this. And for that reason, I will disregard each of these motions filed by Summer Ridge. (*Id*. at 85).

The Bankruptcy Court ultimately withheld any ruling on the merits because, "There's a basic level here of compliance that needs to be met and it hasn't been met here." (*Ibid*.). The Court instructed Frontier's counsel to submit an order dismissing each of Summer Ridge's motions on that basis.

The Bankruptcy Court next considered Tsuei's *pro se* motion to appoint a trustee or examiner to investigate allegations of fraud. In relevant part, 11 U.S.C § 1104 provides that:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
>   (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management . . . or
>
>   (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . .
>
> (b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest

4

> or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate . . . if—
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . .

The Court first assessed whether "cause" existed under § 1104(a)(1) because of fraud, incompetence, or misconduct. Although Tsuei's motion appeared to be based entirely on interests claimed by Summer Ridge (Tsuei did not submit any documents verifying that he was a creditor of Frontier with the Bankruptcy Court), Judge Drain considered the merits of Tsuei's motion as if he were a creditor in his own right, and permitted Frontier's counsel to present oral argument on the matter opposing the motion.

Frontier's counsel argued that, as Tsuei did not appear at the hearing and did not submit any evidence (aside from stating that he relied on Summer Ridge's submission), he did not meet his burden of establishing, by clear and convincing evidence, that a trustee was warranted due to fraud, or that it was otherwise in the interest of the creditors to appoint one. (*Id*. at 89–91). Counsel proffered all of the evidence that Frontier had submitted in its filing opposing the motions. These included the declaration of Carlin Adrianopoli – an individual who consulted Frontier leading up to its bankruptcy – as well several of Frontier's SEC filings, including a 10-K, 10-Q, and two 8-Ks, which had all been filed between August 2019 and May 2020. (*See*, Bankr. Dkt. No. 570). Counsel also noted that the Official Committee of Unsecured Creditors did not request a trustee or examiner, and counsel for the Committee even stated on the record that the Committee believed "it would be a waste of estate resources to appoint an examiner or trustee at this time." (*Id*. at 94).

The Bankruptcy Court denied Tsuei's motion under 11 U.S.C. § 1104(a)(1) to appoint a trustee for cause, holding that Tsuei "has not carried his burden, which the Courts have described as a heavy one." (*Id*. at 96). First, it was "clear" that:

> while the Debtors began to assess their financial condition and alternatives to continuing business as usual in light of what they perceived as a capital structure that had potentially too much debt, the Debtors did not, for purposes of 1104(a)(1), engage in the types of actions that would warrant the appointment of a trustee . . . in terms of misleading the public or other parties in interest. The decision to file a Chapter 11 case is a complicated one. It is often not made until the very last minute and indeed, doesn't appear to me here that it was made until shortly before the case was filed. (*Id*. at 97–98).

In particular, the Court noted that Tsuei failed to prove – by clear and convincing evidence – that it should appoint "a Chapter 11 Trustee based on . . . the discussions of goodwill." (*Id*. at 97).

Second, the Court found that the record showed "that the allegation that the Debtors selectively paid off billions of dollars of debt . . . is simply incorrect. That just didn't happen. There's no clearer way to say it than that." (*Id*. at 98). Thus, there was absolutely no "cause" to appoint a trustee pursuant to 11 U.S.C. § 1104(a)(1).

The Court next considered whether appointing a trustee or examiner was necessary as being in the interest of the creditors under 11 U.S.C. §§ 1104(a)(2) and (c)(1). It held that it was not, noting, "The record provides literally no support for the argument that the appointment is in the interest of Creditors and equity security holders," and that "Frankly, it would be a disaster to have a Chapter 11 Trustee." (*Id*. at 99). The Court thus denied Tsuei's motion under those two provisions as well.

Finally, the Court deferred judgment on whether it should appoint an examiner under § 1104(c)(2), which at least some courts have interpreted to mandate the appointment of an examiner if the Debtor's fixed liquidated unsecured debts exceed $5 million.[1] The Bankruptcy Court observed that Tsuei's "motion is so vague and devoid of any suggestion of what an examiner

---

[1] 11 U.S.C. § 1104(c)(2) states that if the Bankruptcy Court does not appoint a trustee, it shall appoint an examiner to investigate any allegations of fraud, incompetence or misconduct if "the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000."

6

could look into" that even if an examiner was needed, the Court could not even exercise its necessary discretion to outline "the scope of the examiner's duty." (*Id*. at 102). "In light of the deficiencies in the record and [Tsuei's] non-appearance," it declined to rule and directed Tsuei to notice another hearing at which he could make a more cogent argument.

The Bankruptcy Court instructed Frontier's attorneys to file a proposed order outlining all of its decisions regarding Tsuei and Summer Ridge.

Frontier's attorneys duly submitted such a proposed order, and the Bankruptcy Court entered that order on July 10, 2020. (Bankr. Dkt. No. 701). The order succinctly stated the reasons for denying each motion. Summer Ridge's motions to dismiss were denied because it was not represented by counsel, and the Court mandated that any future filings "be brought through counsel admitted to practice in this Court." (*Id*. at ¶ 1). Tsuei's motions for a trustee or examiner under 11 U.S.C. §§ 1104(a)(1), (2), and (c)(1) were all denied because he had "failed to carry his burden of proof." (*Id*. at ¶¶ 3, 4). The order stated that the Court had deferred decision on whether an examiner should be appointed pursuant to § 1104(c)(2) until Tsuei noticed a hearing with the Court to clarify the scope of an "appropriate" investigation for an examiner. (*Id*. at ¶ 5).

The Bankruptcy Court confirmed Frontier's plan of reorganization on August 27, 2020. (Bankr. Dkt. No. 1005). The Effective Date of the plan was April 30, 2021. (Bankr. Dtk. No. 1797).

**C. Appeal**

Tsuei never filed a notice to obtain another hearing date. Instead, he appealed the Bankruptcy Court's denials of his and Summer Ridge's motions on August 10, 2020. That appeal was perfected and fully briefed on November 16, 2021.

7

Tsuei moved for a stay pending appeal in the Bankruptcy Court on August 14 and filed the same motion for a stay with this Court on August 28.[2] The Bankruptcy Court scheduled another omnibus teleconference hearing for September 22, 2020, at which session the motion for a stay pending appeal was to be heard. Frontier filed oppositions to the stay in both the Bankruptcy Court and this Court, and Tsuei filed replies in support of his application in both courts as well.

This Court denied Tsuei's application for a stay on September 21, holding that Tsuei: (1) "has not demonstrated that he will suffer irreparable injury" absent a stay; (2) "lack[ed] standing to appeal from the denial of" Summer Ridge's motion, to the extent he purported to appeal from them; (3) could not appeal from the motion for an examiner under § 1104(c)(2) because the motion had not yet been decided (he had not yet sought the hearing the Bankruptcy Court told him to schedule); and (4) "has most definitely not shown that a stay would be in the public interest." (Dkt. No. 15 at 4).

The Bankruptcy Court went ahead with the September 22 hearing, where Tsuei again failed to appear even though Frontier's counsel had sent him an email letting him know about the teleconference and the procedures he needed to sign in. (Bankr. Dkt. No. 1145 at 11–12). At the hearing, the Bankruptcy Court denied Tsuei's application for a stay pending appeal, noting that it agreed with this Court's determinations that Tsuei was unlikely to succeed on the merits of his appeal. (*Id*. at 15). Although the Bankruptcy Court noted that its ruling may very well be "moot given [this Court's] earlier . . . ruling denying the similar motion," it nevertheless asked for a proposed order from Frontier's attorneys to memorialize the events of the hearing. (*Id*. at 21). That order was entered on September 24, 2020; it stated that Tsuei's application for a stay was denied because he "has not carried his burden of proof." (Bankr. Dkt. No. 1127).

---

[2] The Bankruptcy Court confirmed Frontier's plan for reorganization on August 27, 2020 – the day before Tsuei filed his emergency application for a stay pending appeal with this Court.

8

After the close of briefing on appeal, Tsuei filed an additional three letters with this Court, inquiring about the status of his appeal (filed on January 13, 2021, February 17, and April 7) – the last of which accused the Court of bias against him.

**D. Passage of the Effective Date**

As noted, the Bankruptcy Court approved Frontier's plan of reorganization on August 27, 2020. (Bankr. Dkt. No. 1005). The Effective Date of the plan was April 30, 2021. (Bankr. Dtk. No. 1797). As of April 30, several organizational and operational changes to Frontier took effect, including but not limited to the following:

First, "Old" Frontier was dissolved as an entity, and documents pursuant to a new corporate entity ("Reorganized Frontier") were adopted. Almost all of the assets of Old Frontier were transferred to Reorganized Frontier, including various legal rights, responsibilities, rights of action, and contractual obligations not otherwise explicitly rejected in the new organizational documents. In short, the Frontier that had originally filed for bankruptcy effectively ceased to exist as of the Effective Date, with Reorganized Frontier taking its place. (*See* Plan Art. I.A, IV.L, IV.V, Bankr. Dkt. No. 1005).

Second, the terms of the board of directors of Old Frontier expired, and the entire board was replaced with new members who have now assumed the responsibility of running Reorganized Frontier. (*See* Plan Art. IV.I).

Third, distributions of funds under the Reorganization Plan began and have, by now, largely concluded. For example, Reorganized Frontier began trading on the NASDAQ on May 4, 2021 under a new ticker symbol: FYBR. Pursuant to the plan, all holders of senior, unsecured notes of Old Frontier were issued: (a) a pro rata share of approximately $10 billion of common stock of Reorganized Frontier; (b) a pro rata share of $750 million of new second lien secured

notes, due in 2029; and (c) a pro rata cash distribution. (*See* Plan Art. III.C). Moreover, all debtor-in-possession financing that was used to continue Old Frontier's operations during its bankruptcy proceedings have been converted into different forms of debt. (Bankr. Dkt. No. 1096).

On May 6, 2021, Frontier filed a notice with this Court informing it of the passage of the Effective Date. The next day, the Court issued an order to show cause to the parties inquiring their positions on whether or not this appeal should be dismissed as equitably moot. The Court provided the parties with a deadline of May 28, 2021 to file their responses, which Tsuei (who is still *pro se*) and Frontier's attorneys have duly submitted.

Tsuei actually filed four documents in response to the order: (1) an "objection to dismiss the appeal" in which he argues that the Court "neglected the [sic] duty and violated the law" by taking too long to decide the appeal; (2) a "motion to change the judge instantly"; (3) a reply to Frontier's brief; and (4) a sur-reply to Frontier's opposition to his motion to change the judge.

Frontier filed a brief which outlined its position that the appeal should be dismissed as equitably moot because the plan of reorganization has been substantially consummated. It also filed an opposition to Tsuei's "motion to change the judge instantly," which the Court interprets as a motion for recusal.

## II. Discussion

### A. Tsuei's Motion for Recusal

The Court first addresses Tsuei's accusations of bias and his "motion to change the judge instantly." Tsuei insists that, according to Federal Rule of Civil Procedure 58(c)(2), the Court was required to enter a judgment in this case within 150 days of when he filed his notice of appeal. He insists that the Court exhibited bias against him by intentionally neglecting to comply with this obligation.

Tsuei's reliance on Rule 58(c)(2) is misplaced. That rule dictates when a district court's judgment must be entered following a decision; it sets no time limit on deciding a bankruptcy appeal. *See Dancy v. McGinley*, 843 F.3d 93, 105 n.9 (2d Cir. 2016). I agree with Tsuei that every court has an obligation to dispose of the matters before it promptly and assure him that I got to his appeal as promptly as was possible given the press of other business.

Tsuei has not demonstrated that this court harbors any bias toward him. His only argument is drawn from his misguided view that the Court violated Fed. R. Civ. P. 58 by not deciding his appeal quickly enough. It is true that the Court gave Tsuei a preliminary read on the merits of his appeal when I denied (quite promptly) his motion for a stay pending appeal; but that is not evidence of bias. Rather, it represents an assessment of the likelihood that he would have succeeded once the appeal was fully briefed. That analysis is as cogent today as it was back in September 2020. Tsuei could not pursue Sumner Ridge's claims or represent the corporation before the Court; it was not clear that Tsuei was a creditor in his own right and so had any basis to seek the appointment of an examiner; and Judge Drain had not, and still has not, issued a final decision on the application for appointment of an examiner, making an appeal on that issue premature. Nothing about the Court's prior ruling demonstrates bias of any sort.

The recusal motion is denied.

### B. Equitable Mootness Doctrine

Equitable mootness is "a prudential doctrine under which the district court may dismiss a bankruptcy appeal 'when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.' " *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 481 (2d Cir. 2012) (citation omitted). It is primarily "concerned with whether a particular remedy can be granted without unjustly upsetting a debtor's plan of reorganization." *Ibid*. This makes the

doctrine different from that of constitutional mootness (i.e., whether there is a live case or controversy). Instead, it is a " 'pragmatic' doctrine, one that is 'grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable.' " *In re BGI, Inc.*, 772 F.3d 102, 107 (2d Cir. 2014) (quoting *Deutsche Bank AG v. Metromedia Fiber network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005)). In short, equitable mootness is the ability of a district court to simply dismiss a bankruptcy appeal if it is *unwilling* to alter the outcome, not because it necessarily is *unable* to do so. *See In re UNR Indus.*, 20 F. 3d 766, 769 (7th Cir. 1994).

In the Second Circuit, a bankruptcy "appeal is presumed equitably moot where the debtor's plan of reorganization has been substantially consummated." *In re Charter Commc'ns, Inc.*, 691 F.3d at 482; *Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772, 776 (2d Cir. 1996) ("*Chateaugay III*"). "Substantial consummation" is a term defined in the Bankruptcy Code, it means:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

Once a reorganization plan has been substantially consummated, a bankruptcy appeal is *presumed* to be moot unless the litigant challenging the plan can satisfy all five of the "*Chateaugay* factors." These require the litigant to demonstrate that:

> (1) "the court can still order some effective relief";

(2) "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity";

(3) "such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court";

(4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings"; and

(5) "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."

*In re Charter Commc'ns, Inc.*, 691 F.3d at 482 (quoting *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952–53 (2d Cir. 1993) ("*Chateaugay II*")). Although an appeal is not *per se* equitably moot just because a plan of reorganization has been substantially consummated, a challenger must meet all five of the above-mentioned factors for the appeal to not be dismissed.

Finally, "an appeal does not need to directly challenge a reorganization plan to impact that plan" and thus for the doctrine to apply. *In re Windstream Holdings, Inc.*, 838 F. App'x 634, 637 (2d Cir. 2021). The doctrine has been applied in a variety of contexts, and the key is whether a grant of relief would "potentially requir[e] the bankruptcy court to reopen the plan of reorganization," *ibid*, or would otherwise "create an unmanageable, uncontrollable situation for the Bankruptcy Court," *Chateaugay II*, 10 F.3d at 953 (citation omitted).

**C. Application**

1. <u>Frontier's Plan of Reorganization has been Substantially Consummated</u>

The facts show that Frontier's plan of reorganization has been substantially consummated. As of the Effective Date, Frontier has completely reorganized into a new corporate entity with a new board, and new organizational documents. The assets of Old Frontier have been transferred to a new entity, and the new entity has started trading on the NASDAQ under a new ticker. Most

importantly, a significant portion (if not all) of the property transfer contemplated by the Reorganization Plan has already occurred – all holders of senior, unsecured notes of Frontier have been paid according to the plan, and the debtor-in-possession financing that Frontier used to proceed through bankruptcy has also been converted into different types of debt. For all intents and purposes, Frontier has "emerged" from bankruptcy.

Courts in this circuit have found that similar circumstances required a finding of substantial consummation. In *In re BGI, Inc.*, the Second Circuit held that the passing of the effective date, after which the reorganized company "transferred its relevant property to the Trust, and the Trust began administering timely filed claims and making distributions to holders of allowed . . . claims," was enough for substantial consummation. 772 F.3d at 110. Similarly, other courts have found that a plan has been substantially consummated simply after the passage of the effective date. *See, e.g., In re Charter Commc'ns, Inc.*, 449 B.R. 14, 23 (S.D.N.Y. 2011) *aff'd* 691 F.3d 476 (2d Cir. 2012); *In re Adelphia Commc'ns Corp.*, 367 B.R. 84, 94 (S.D.N.Y. 2007).

Here, there can really be no dispute that Frontier's Reorganization Plan has been substantially consummated, and Tsuei does not make any arguments disputing this conclusion. Accordingly, the Court concludes that the first factor of the equitable mootness doctrine is met and that the appeal is presumed moot unless this presumption can be overcome.

2. Tsuei Cannot Overcome the Presumption of Equitable Mootness

Tsuei also cannot overcome the presumption that the appeal is equitably moot. He makes no cogent argument in any of his submissions that is related in any way to the mootness question. Instead, his *pro se* submissions focus on his belief that the Court has acted unfairly against him. Since a Court must construe a *pro se* litigant's submissions liberally, I will nevertheless conduct an analysis of the *Chateaugay* factors. However, even construing Tsuei's position favorably, he cannot overcome the presumption – for the reasons largely articulated in Frontier's brief.

14

First, the Court is likely unable to grant the relief that Tsuei is requesting – the appointment of a trustee or examiner to oversee Frontier's bankruptcy process. As discussed, Frontier has effectively "emerged" from bankruptcy, and the Old Frontier over which Tsuei desires trustee supervision no longer exists. Indeed, the statute under which Tsuei is seeking relief states that a trustee or examiner can only be appointed "before confirmation of a plan." *See* 11 U.S.C. § 1104(a), (c). Frontier's Reorganization Plan was confirmed on August 27, 2020. Therefore, before this Court even had occasion to consider his application for a stay pending appeal, it was too late for Tsuei to obtain the relief he sought, whether on his behalf or on behalf of Sumner Ridge.

Second, as Frontier points out, any relief that could possibly be granted to Tsuei would essentially undo the "reemergence of the debtor as a revitalized corporate entity" and would "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court" (factors two and three). *In re Charter Commc'ns*, 691 F.3d at 482 (citation omitted). A new board has already been seated, new stock has been issued, and debts have been paid. Tsuei requests the appointment of a trustee or examiner to look into his conclusory allegations of bankruptcy fraud. But any such appointment would disrupt the operation of the new corporate entity considerably. As noted, it appears statutorily impossible to grant such relief after a plan has already been confirmed. *See* 11 U.S.C. § 1104. Thus, Tsuei's request would necessarily require a reopening or revocation of the Reorganization Plan. Given "the nature and complexity of the multitude of transactions that have taken place since confirmation," it would simply be "impossible to undo these transactions." *In re Delta Air Lines, Inc.*, 386 B.R. 518, 538 (S.D.N.Y. 2008).

"The parties who would be adversely affected by" the requested relief also do not "have notice of the appeal and an opportunity to participate in the proceedings" (factor four). *In re Charter Commc'ns*, 691 F.3d at 482 (citation omitted). Even reopening the bankruptcy proceedings to revisit just a portion of the plan would have a considerable impact on Reorganized Frontier's equity value and may impact its new stockholders. Frontier also notes that the reorganized entity has issued several public statements to consumers, investors, employees, and partners – all predicated on the consummation of the plan and it moving forward. All of those who relied on such statements may be harmed by revisiting the bankruptcy proceedings, and they clearly do not have notice of Tsuei's appeal.

The only factor on which Tsuei arguably meets his burden is that he "pursued with diligence all available remedies to obtain a stay of execution of the objectionable order" (factor five). *Ibid*. Indeed, he was far more diligent about seeking a stay than he was about prosecuting the merits of the motion; although he failed to turn up at the original hearing, and never scheduled the second hearing that Judge Drain offered him, he moved quite promptly, in both this Court and the Bankruptcy Court, for a stay pending appeal. However, as he never obtained a final ruling on his application for appointment of an examiner under 11 U.S.C. § 1104(c)(2), there was nothing to stay – assuming that Tsuei was himself a creditor of Frontier, which has not been established to the satisfaction of this Court to date. Regardless, since Tsuei must meet all five *Chateaugay* factors to overcome the presumption of equitable mootness, even arguably satisfying this burden is not enough to sustain the appeal.

Sumner Ridge, I should note, has not pursued anything with diligence, since it never appeared by counsel, never filed a valid notice of appeal, and never did anything correctly.

*****

The appeal is dismissed as equitably moot.

The Clerk is respectfully directed to remove Dkt. No. 25 from this Court's list of open bankruptcy appeals and to close this case.

Dated: June 8, 2021
New York, New York

United States District Judge

BY ECF TO ALL PARTIES